UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BROOKE MATHEWS,<br><br>Plaintiff,<br><br>— against —<br><br>TOWN OF BRUNSWICK, NATHAN DAY, and OFFICER JOHN DOE,<br><br>Defendants. | Case No.<br><br>COMPLAINT<br>JURY TRIAL DEMANDED |

## PRELIMINARY STATEMENT

1. This is a civil rights and personal injury action arising from an assault committed by Defendant Brunswick Police Officer Nathan Day against Plaintiff Brooke Mathews during a traffic stop in Brunswick, Maine on December 18, 2025. Officer Day, without lawful justification, struck Plaintiff and slammed her into a car, rendering her unconscious and causing her to suffer a head wound, concussion, seizure activity, foot fracture, and related injuries requiring multiple hospitalizations.

2. Officer Day was subsequently charged with Class D assault by the Office of the Maine Attorney General in connection with this incident, a charge presently pending in West Bath District Court.

3. Defendant Town of Brunswick is liable under 42 U.S.C. § 1983 because it maintained, through deliberate indifference, customs, policies, and practices that permitted Officer Day to continue serving as a police officer despite the Town's actual and constructive notice of (a) Officer Day's demonstrated history of aggressive and violent conduct as an officer, and (b) broader patterns within the Brunswick Police Department of tolerating excessive and

unreasonable use of force by its officers.

4. Defendant Town of Brunswick's failure to discipline its officers and deliberate indifference to their actions was a driving force in Ms. Mathews' injuries.

5. Plaintiff brings this action to recover compensatory and punitive damages, together with costs, interest, and attorney's fees, for violations of her rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

6. This Court has jurisdiction to adjudicate Plaintiff's claims arising under 42 U.S.C. § 1983 for violations of her rights secured by the United States Constitution.

7. Venue is proper in this court as the incident occurred in Cumberland County.

## PARTIES

8. Plaintiff BROOKE MATHEWS is a resident of Bath, Maine, who attends Southern Maine Community College.

9. Defendant NATHAN DAY was a police officer with the Brunswick Police Department in December 2025. He was at all relevant times described herein employed by the Brunswick Police Department, an agency in the Town of Brunswick. At all relevant times described herein he was acting under color of Maine state law and in the course and scope of his duties. He is sued in his individual capacity.

10. Defendant JOHN DOE was a Brunswick Police Department officer with Nathan Day at the time of Ms. Mathews' arrest and assault who further continued her illegal arrest after her assault. His true identity is presently unknown to Plaintiff. He is sued in his individual capacity.

11. Defendant Day and Defendant Doe were employed and trained by the Town and

Brunswick Police Department acting within the scope of his employment and under the direction of the Town and BRUNSWICK POLICE DEPARTMENT.

12. At all times herein mentioned, Defendant, THE TOWN OF BRUNSWICK, was and is a municipal corporation organized and existing under the laws of the State of Maine.

13. At all times mentioned hereinafter, THE TOWN OF BRUNSWICK, its agents, servants, and employees (hereinafter, "the Town") operated, maintained, and controlled the Brunswick Police Department, including all the police officers and employees thereof.

## FACT ALLEGATIONS

14. On December 18, 2025, Plaintiff was driving alone in her car following her boyfriend, who was driving separately in his own vehicle. The couple were traveling separately, en route to a body shop to repair a taillight on Plaintiff's boyfriend's car.

15. Before they reached the body shop, Officer Day stopped her boyfriend for a traffic violation, presumably for the broken taillight.

16. Following Officer Day's instruction, Plaintiff's boyfriend pulled over in the parking lot of the Cooks Corner Shopping Center in Brunswick, Maine.

17. Plaintiff followed, pulling into the same parking lot, to wait for her boyfriend while Officer Day conducted the traffic stop.

18. Plaintiff remained across the parking lot, apart from the vehicle stop, for approximately forty-five minutes to one hour.

19. Eventually, Defendant Day directed Plaintiff to exit her vehicle and come over to speak with him.

20. Upon Plaintiff's approach, Defendant Day, without lawful justification, provocation, or legitimate law-enforcement purpose, assaulted Plaintiff, slamming her head into

the car and onto the ground.

21. As a result of Defendant Day's use of force, Plaintiff lost consciousness.

22. When she came to, Plaintiff was dizzy and felt pain in her head. She was placed under arrest for false traffic violation charges including operating a vehicle while impaired by using a handheld device, registration brakes not plainly visible and legible, and for having impaired brake lights. The traffic violation charges were later dismissed on September 24, 2026.

23. Plaintiff was handcuffed and transported to the hospital for treatment. Plaintiff was detained at the hospital by Officer Day and Officer Doe, handcuffed for an hour before being unshackled. She was conscious of her confinement and not free to leave.

24. When she stood up at the hospital and placed weight on her foot, she immediately felt pain.

25. Plaintiff was subsequently diagnosed with severe injuries, including a concussion, laceration to her head that required staples. She was later informed of seizure activity after the assault. She also complained of pain to her right foot; a fracture to her right medial cuneiform was later visualized.

26. Plaintiff was hospitalized on multiple occasions at Mid Coast Hospital and Maine Medical Center to treat these injuries.

27. Plaintiff continues to experience medical issues related to the injuries she sustained on December 18, 2025.

28. At the time of the assault, Plaintiff was seventeen (17) years old.

29. Defendant Day was placed on administrative leave by the Brunswick Police Department on December 19, 2025, one day after the assault.

30. Upon information and belief, Defendant Doe has not been subject to any penalties

for the illegal arrest of Plaintiff.

**B. Criminal Prosecution of Defendant Day**

31. On or about March 16, 2026, the Office of the Maine Attorney General charged Defendant Day with Class D assault in connection with the December 18, 2025, incident described here in, in a matter pending in West Bath District Court.

32. Defendant Day was ordered to appear for arraignment in West Bath District Court on May 5, 2026.

33. Defendant Day's criminal case is still pending.

**C. Defendant Day's History of Aggressive and Violent Conduct**

34. Prior to the December 18, 2025, assault on Plaintiff, Defendant Day had been admonished but not subjected to any penalties by the Brunswick Police Department on at least three separate occasions.

35. In September 2023, Defendant Day was disciplined for operating a police cruiser in an aggressive manner that violated department policy. A supervisor stated in the corresponding disciplinary record that Defendant Day "was being a bit too tenacious in his attempt to initiate [motor vehicle] stops" and that he "is an aggressive officer when it comes to [motor vehicle] enforcement."[1] In the same record, the supervisor wrote, "I am confident this will not continue to occur."[2]

36. On or about July 15, 2025, Defendant Day was disciplined for pursuing a driver in his cruiser without probable cause or reasonable suspicion of a serious crime.

37. In August 2025, Defendant Day was admonished but suffered no penalties after

---

[1] Katie Langley & Morgan Womack, Brunswick Officer Accused of Assaulting a Minor Faced Previous Discipline, Portland Press Herald (Mar. 24, 2026) (quoting Brunswick Police Department disciplinary record, Sept. 2023 incident).

[2] *Id.*

using force against a suspect in a manner that the Brunswick Police Department's own internal disciplinary record characterized as force that "did not comply with . . . department standards" and was "unreasonable or unnecessary for the particular circumstances."[3] Defendant Day was required to complete remedial training with the Department's Defensive Tactics Unit as a result of this incident. Defendant Day completed that training and was returned to patrol duties.[4]

38. The August 2025 finding came approximately four months before Defendant Day assaulted Plaintiff.

39. Each of these incidents arose from Defendant Day's enforcement activity on patrol. The September 2023 and July 2025 incidents arose from his motor vehicle enforcement. The assault on Plaintiff likewise arose from a motor vehicle stop.

40. The incidents escalated in seriousness: from aggressive operation of a cruiser in September 2023, to a pursuit without probable cause or reasonable suspicion of a serious crime in July 2025, to physical force against a person that the Department itself found unreasonable or unnecessary in August 2025, to the assault on Plaintiff in December 2025.

41. The supervisor's September 2023 assurance that Defendant Day's aggressive conduct "will not continue to occur" proved wrong, and the Department knew it was wrong by July 2025 at the latest.

42. Notwithstanding this documented pattern of aggressive and unreasonable conduct, Defendant Day was, in each instance, subject only to an oral or written reprimand. He was never suspended, demoted, or discharged. That remained true even after the Brunswick Police Department found in August 2025 that his use of force – assaulting a pregnant woman – was

---

[3] *Id.*
[4] *Id.*

unreasonable or unnecessary.[5]

43. Upon information and belief, Defendant Day did not dispute or grieve any of these disciplinary actions.

44. After the August 2025 finding, the Brunswick Police Department returned Defendant Day to regular patrol duties, including traffic enforcement. Upon information and belief, the Brunswick Police Department did not assign Defendant Day to a field training officer or supervisor for monitoring, restrict him from patrolling alone, audit his body-worn camera footage for further uses of force, place him on a performance improvement plan, or require a fitness-for-duty or psychological evaluation.

45. The Brunswick Police Department knew how to remove Defendant Day from patrol when it chose to. It placed him on administrative leave on December 19, 2025, the day after he assaulted Plaintiff. It took no comparable step after its own finding in August 2025 that his use of force was unreasonable or unnecessary.

46. The Brunswick Police Department's response departed from discipline standards used by other Maine police departments. For example, the Bangor Police Department's discipline policy lists "[t]he use of unnecessary force during an arrest/custody procedure" among offenses "of such severity as to merit suspension or dismissal at a single occurrence."[6]

47. The Town of Brunswick and the Brunswick Police Department were aware of each of the foregoing disciplinary incidents at the time they occurred, as each was investigated and resolved internally by the Department.

48. Scott Stewart has served as Chief of the Brunswick Police Department since 2020.[7]

---

[5] *Id.*
[6] Bangor Police Dep't, Policy 1-11, Employee Discipline § V.A.3(aa) (eff. May 14, 2021).
[7] *Brunswick Police Chief Appointed to International Police Committee*, Portland Press Herald (Feb. 21, 2024).

He was Chief at the time of each disciplinary incident described above and at the time of the assault on Plaintiff.

49. Upon information and belief, Chief Stewart personally reviewed and approved the disposition of each of the disciplinary matters described above, including the decision to impose only a reprimand and remedial training after the August 2025 finding of unreasonable or unnecessary force.

50. Upon information and belief, the Brunswick Police Department is a small department of approximately 30 sworn officers. In a department of that size, three sustained disciplinary findings against a single officer in roughly two years, including a finding of unreasonable force, could not have escaped the Chief's attention.

51. In February 2024, between Defendant Day's first and second disciplinary incidents, Chief Stewart was appointed to the International Association of Chiefs of Police's Police Professional Standards, Ethics and Image Committee. On his appointment, he stated that he looked forward to "enhancing current law enforcement standards, accountability, and overall image."[8] Chief Stewart was therefore aware of the importance of holding accountable officers who violate department standards.

52. Following public reporting on the charges against Defendant Day, members of the Brunswick community publicly expressed concern regarding the Brunswick Police Department's transparency and disciplinary practices. For example, in a March 18, 2026, social media post responding to news coverage of the charges against Defendant Day, a Brunswick-area social media user wrote that he was "sick and tired of this department['s] lack of transparency with the public," "tired of this department doing the most to cover up wrongdoing by the officers they employ," and

---

[8] *Id.*

"tired of being lied to or denied evidence from the department regarding [a public records] request for body and dash cams."[9]

53. Members of the public have also publicly described a broader pattern of aggressive conduct within the Brunswick Police Department. In an online discussion thread concerning the Department, one participant stated that Defendant Day and a fellow officer "are kind of notorious at this point."[10]

54. In the same discussion thread, a participant identifying himself as a practicing criminal defense attorney stated: "Brunswick PD is one of the worst departments I deal with regularly. A lot of arrests for Refusing to Submit to Arrest or Detention, and no other charge. Lots of pretextual traffic stops then request to search the car that turn into arrests for possession. Lots of forceful and unkind treatment of suspects. . . . [A] regressive and reactionary approach to law enforcement that doesn't really solve any of the underlying problems."[11]

55. Another video posted on YouTube shows Officer Day and fellow officers disregarding the Fourth Amendment rights of passengers in cars.[12]

**E. The Town's Disciplinary Authority and Chief Stewart's Role**

56. The Town of Brunswick operates under a council-manager charter, under which the Town Manager, with consent of the Town Council, appoints and removes department heads and directs and supervises the administration of all departments.[13]

57. The Town's Personnel Policy designates the Town Manager as the appointing

---

[9]Instagram post by @207_run_it (Mar. 18, 2026), https://www.instagram.com/reel/DWBin28EVGj/ (screenshot retained in case file).
[10] Reddit, r/Maine, "A (Hopefully) Civil Discussion About Brunswick PD" (comment of u/CaptKirkSmirk), https://www.reddit.com/r/Maine/comments/1twk4tj/a_hopefully_civil_discussion_about_brunswick_pd/
[11] Reddit, r/Maine, "A (Hopefully) Civil Discussion About Brunswick PD" (comment of u/D1rty-Burger), https://www.reddit.com/r/Maine/comments/1twk4tj/a_hopefully_civil_discussion_about_brunswick_pd/ (screenshot retained in case file)., quoted for context only.
[12] https://www.youtube.com/watch?v=0ReqFasO7cU&t=5s
[13] Brunswick, Me., Town Charter § 301 et seq.

authority for all Town positions but permits the Town Manager to delegate that authority to department heads.[14]

58. Under the Personnel Policy, the Chief of Police selects police officer appointees from the eligibility list, makes all promotions within the Brunswick Police Department, and may require an officer to undergo a psychological examination.[15]

59. Upon information and belief, Chief Stewart never required Defendant Day to undergo a psychological examination, including after the August 2025 finding that Defendant Day had used unreasonable or unnecessary force.

60. Under the Personnel Policy, the Chief of Police, as a Department Head, may impose discipline ranging from oral reprimand through discharge, and conducts the hearing that must precede any suspension, demotion reduction in pay, or discharge.[16]

61. Upon information and belief, the collective bargaining agreement between the Town and the Brunswick Police Benevolent Association likewise vests in the Chief of Police the authority to investigate officer misconduct, to conduct disciplinary hearings, and to impose discipline ranging from oral reprimand through discharge. Under that agreement, the Town Manager reviews the Chief's disciplinary decisions only if the disciplined officer files a grievance.

62. Upon information and belief, from at least 2023 through December 2025, the Chief of Police held the same or materially similar disciplinary authority, under the collective bargaining agreement and the Town's personnel rules then in effect, including the authority to impose cumulative and escalating discipline for repeated misconduct.

63. The Personnel Policy expressly authorizes cumulative and escalating discipline,

---

[14] Town of Brunswick, Personnel Policy § 2-6 (adopted June 15, 2026).
[15] *Id.* §§ 6-5 to 6-7.
[16] *Id.* §§ 14-2, 14-3.

providing that "[r]epeated misconduct or continuing performance problems may be considered cumulatively and subject to more severe discipline, even if the conduct or performance problems vary in nature or severity."[17]

64. Oral and written reprimands do not require notice or a hearing. Only decisions rendered after notice and a hearing, which the Personnel Policy only requires for suspension, demotion, reduction in pay or discharge, may be appealed to the Town Manager, and that appeal is available only to the disciplined employee.[18]

65. Nothing in the Personnel Policy permits the Town Manager or any other Town official to review a decision by the Chief of Police that discipline was too lenient.[19]

66. By only reviewing decisions where discipline is indicated, the Town Manager and Town officials have abdicated supervisory responsibility over the Brunswick Police Department.

67. Because Defendant Day received only oral or written reprimands, none of the disciplinary decisions concerning him was eligible for appeal to, or review by, the Town Manager.

68. Because Defendant Day did not grieve any of his discipline, no Town official other than the Chief of Police reviewed any disciplinary decision concerning him.

69. Upon information and belief, neither the Town Manager nor the Town Council has reviewed, overruled, or directed the Chief's handling of discipline for any police officer, and the Town has acquiesced in the Chief's exercise of final authority over police discipline.

70. Chief Stewart publicly confirmed that Defendant Day had completed the remedial training order after August 2025 incident, and he explained that when an officer is placed on administrative leave, the Brunswick Police Department conducts an internal affairs investigation

[17] *Id.* § 14-2.
[18] *Id.* §§ 14-2, 14-3.
[19] *Id.* §§ 14-2 to 14-5.

focused on department policy.[20]

**FIRST CAUSE OF ACTION**
**(Fourth Amendment – Excessive Force – 42 U.S.C. § 1983)**
**Against Defendant DAY**

71. Plaintiff repeats and reiterates the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth hereat.

72. Defendant violated the Fourth Amendment Rights of Plaintiff.

73. Defendant's use of force against Plaintiff was objectively excessive and unreasonable.

74. Defendant was acting under color of state law.

75. Defendant is aware that his actions against Plaintiff were a violation of the Rights granted to Plaintiff pursuant to the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

76. On or about December 18, 2025, Defendant Day acted with evil motive and intent and/or with callous indifference towards Plaintiff.

77. As a result of the acts of each Defendant complained of, Plaintiff BROOKE MATHEWS sustained injuries, pain and suffering, emotional distress, medical and other expenses, loss of enjoyment of life, and other pecuniary loss.

**SECOND CAUSE OF ACTION**
**(Fourth Amendment – False Arrest – 42 U.S.C. § 1983)**
**Against Defendants DAY and DOE**

78. Plaintiff repeats and reiterates the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth hereat.

79. Defendants Day and Doe seized and arrested Plaintiff without a warrant, placed her

[20] Langley & Womack, *supra* note 1.

in handcuffs, and kept her in custody, including for hours while she was handcuffed at the hospital.

80. Defendants Day and Doe lacked probable cause to believe that Plaintiff had committed any crime.

81. Defendant Day cited Plaintiff for civil traffic infractions arising from the events of December 18, 2025.

82. Those citations were dismissed on September 24, 2026.

83. Defendant Doe knew that Defendant Day had assaulted Plaintiff, rendered her unconscious, and, upon information and belief, knew that no probable cause existed to arrest her. Defendant Doe nonetheless continued Plaintiff's detention and kept her handcuffed at the hospital.

84. Plaintiff was conscious of her confinement, did not consent to it, and was not free to leave.

85. Defendants Day and Doe were acting under color of state law.

86. As a result of Defendants Day's and Doe's conduct, Plaintiff BROOKE MATHEWS suffered loss of liberty, emotional distress, humiliation, and other damages.

**THIRD CAUSE OF ACTION**
**(Monell Claim Under 42 U.S.C. § 1983)**
**Against the Town of Brunswick**

87. Plaintiff repeats and reiterates the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth hereat.

88. At all relevant times, Chief Stewart was the final policymaker for the Town of Brunswick with respect to the discipline, supervision, and retention of Brunswick police officers.

89. The Town of Brunswick maintained a custom of tolerating Defendant Day's escalating aggressive conduct by imposing only minimal discipline in response to each documented incident prior to Plaintiff's assault.

90. The Town of Brunswick utterly failed to intervene and discipline their Police Officers, including Defendant Day, despite having adequate notice of his unlawful prior behavior.

91. Prior to December 18, 2025, Defendant Day demonstrated patterns of aggressive and unreasonable force and a pattern of disregarding the Fourth Amendment.

92. Despite this notice, the Town of Brunswick responded to each documented instance of Defendant Day's misconduct with only oral or written reprimands — and took no meaningful corrective, disciplinary, or remedial action reasonably calculated to prevent Defendant Day from engaging in further unjustified use of force against members of the public.

93. The Town of Brunswick had authority under its Personnel Policy to impose cumulative and escalating discipline, including suspension, demotion, reduction in pay, or discharge, for repeated misconduct, even where that misconduct varied in nature or severity. The Town never did so.

94. Instead, the Town of Brunswick returned Defendant Day to Patrol after the Department found in August 2025 that his use of force was unreasonable or unnecessary.

95. The Town's response to Defendant Day's escalating misconduct was so disproportionately mild that it communicated to Defendant Day that the Town would tolerate his unreasonable use of force.

96. The Town of Brunswick's response, and lack thereof, to this pattern of notice reflects a custom, policy, or practice of deliberate indifference to the constitutional rights of persons, including Plaintiff, who came into contact with Defendant Day.

97. After the August 2025 incident, Defendant Town of Brunswick was aware of Defendant Day's dangerous propensities to use unreasonable force.

98. As of August 2025, Defendant Day had further learned that violations of

department policy did not cost him anything, and that his violations of department policy would not cause him professional harm.

99. The Town of Brunswick further conducted inadequate and perfunctory investigations into Officer Day's repeated misdeeds.

100. Chief Stewart's decisions to impose only oral or written reprimands on Defendant Day were not subject to notice, hearing, or appeal under the Personnel Policy. Those decisions were final and constitute the policy of the Town of Brunswick.

101. Chief Stewart's decisions to keep Defendant Day on patrol with only reprimands, made with knowledge of Defendant Day's disciplinary record, were deliberate choices among available alternatives by the official responsible for police discipline.

102. The need for more than a reprimand was obvious. After August 2025, the Town knew that Defendant Day had used unreasonable force against a member of the public, that prior reprimands and a supervisor's written assurance had not corrected his aggressive conduct, and that he would return to patrol, continue to make traffic stops, and continue to use force. It was highly predictable that, without meaningful discipline, supervision, or removal from patrol, Defendant Day would again use unreasonable force against a member of the public.

103. The Town of Brunswick's deliberate indifference to Defendant Day's individual pattern of violent and aggressive conduct was a moving force behind, and a direct and proximate cause of, the violation of Plaintiff's constitutional rights and the injuries she sustained on December 18, 2025.

104. Had the Town imposed escalating discipline after the August 2025 finding, including suspension, removal from patrol, or discharge, Defendant Day either would not have been on patrol conducting a traffic stop on December 18, 2025, or would have been deterred from

using unreasonable force against Plaintiff.

105. Moreover, the Town of Brunswick has shown a consistent and persistent indifference to its officers harassing and intimidating individuals for years.

106. Public statements make clear that the Brunswick Police Department has a known and consistent reputation for disregard for constitutional rights, including one practicing defense attorney stating that there was persistent "forceful and unkind treatment of suspects."

107. Social media posts indicate repeated and aggressive use of pretextual stops such as those Ms. Mathews experienced in violation of the Fourth Amendment.

108. The Town of Brunswick's deliberate indifference to its officers' disregard for the Fourth Amendment was a driving force behind Officer Day's actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment as follows:

a. Compensatory damages;

b. Punitive damages

c. Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

d. Such other and further relief as this Court deems just and proper.

Dated: November 6, 2026

/s/ Rachel M. Wertheimer
Rachel M. Wertheimer
**VERRILL DANA LLP**
One Portland Square, 10th Floor
Portland, Maine 04101
(207) 253-4620
rwertheimer@verrill-law.com

**WERTHEIMER FLEDER LLP**

Joel A. Wertheimer (*pro hac vice* pending)
14 Wall Street, Suite 4C
New York, New York 10005
(646) 720-1098
joel@wfllp.com

*Attorneys for Plaintiff*